WATSON, Judge.
Surviving parents of two teenaged girls filed these wrongful death claims arising from an automobile crash which caused the deaths of the two girls. From a judgment by the trial court dismissing the claims, plaintiffs appeal.
Plaintiffs are Mr. and Mrs. Inis Fonte-not, parents of Patty Ann Fontenot, age IS, and Mrs. Joseph C. Bondick, mother of Marie Annette Horton, age 14. The two minor girls were killed in an automobile accident on Louisiana Highway 10 in Evangeline Parish at approximately 11:00 p. m. on December 16, 1970. They were *550 passengers in a 1967 Mercury Cougar, probably driven by Paul Odom, and carrying a fourth person, Earl Linder. Both Odom and Linder were also killed in the tragic event.
The defendant is the Louisiana State Department of Highways, and the essential charge against the Department is that the curve where the accident occurred was not properly marked.
The trial court dismissed plaintiffs’ petition without assigning written reasons. On appeal, plaintiffs urge the negligence of the Department of Highways as a cause of the accident. The Department contends that the accident was caused solely by the negligence of the driver of the Cougar automobile, and, in the alternative, that the deceased girls were contributorily negligent.
Our examination of the record reveals only one issue which, when resolved, is dispositive of the appeal, and that issue is whether the alleged negligence of the Department was a cause in fact of the accident.
The facts surrounding the accident are virtually undisputed.
The two young men, in their early 20’s, were taking the two girls from Ville Platte to Oakdale where the girls were to visit with friends. They left the Fontenot home in Ville Platte where plaintiff, Inis Fon-tenot, noted nothing unusual about the appearance of the two young men. However, some time later, the group was seen by a Mrs. Strother at the Golden Spur Lounge. She was the last person to see them alive. The two young men purchased a beer and she testified that they, especially Linder, gave some indication of intoxication. Their car left the lounge parking lot at a high rate of speed spinning gravel as it went.
Apparently, they proceeded from the Golden Spur toward Oakdale where as they entered a slight curve (estimated at four degrees by one witness) the Cougar left the blacktop surface of the road, placed 348 feet of tiremarks along the shoulder and ditch, skinned several smaller trees and finally crashed into an 18-inch pine tree with such force, according to the investigating officer, as to leave the car “wrapped around a tree” (TR. 26) with the “top sheared off” (TR. 30). The investigating officer estimated the speed of the vehicle at 80 miles per hour and, according to our review of the record, this was probably a conservative estimate. The four occupants of the Cougar sustained severe multiple injuries which need not be detailed. The damage to the automobile was massive and must have resulted from the vehicle striking the tree with considerable force because the “impact was terrific” according to the testimony of Dr. Frank Savoy, Jr., coroner of Evangeline Parish, who made an investigation at the scene. The doctor took blood samples from the two male occupants of the automobile because there was some doubt as to which was driving. These blood samples, after testing by the State Police Laboratory showed Odom with a blood alcohol content by weight of 0.16 and Linder with 0.-19. According to Dr. Savoy, 0.10 would be a sufficient content to interfere with reflexes and speech; 0.15 would indicate drunkenness; and 0.20 would approach the passing-out stage. (TR. 180, Vol. Ill) As to Odom’s reading of 0.16, Dr. Savoy stated his opinion that this reading would reflect that he was drunk and unable to operate the vehicle with safety. The reading on Linder would indicate, according to the doctor, that he was in worse shape than Odom.
It is with some reluctance that we detail the condition of these two young men, now deceased, but our summary of the facts characterizes the tenor of the entire record which is to the effect that the accident resulted from the extremely high speed operation of the Cougar automobile by an in *551 toxicated driver. Our conclusion, from reading the record, and we believe that of the trial court who saw and heard the witnesses, is that the cause in fact of the accident was the high speed of the vehicle.
Counsel for plaintiffs attempted to prove that the curve sign which was located several hundred feet away from the curve was not placed high enough on its post and that it was partially obscured by a bridge hazard warning sign (a long, thin sign located vertically with black and white stripes, the purpose of which is to warn a motorist of the concrete bridge rail). The contention is that the hazard marker partially or entirely obscured the curve sign and prevented motorists from seeing it. While the evidence offered and the theory advanced by counsel for plaintiffs is impressive in its detail, there are three factors which destroy his theory. These are: (1) there is considerable and persuasive evidence that the curve could have been negotiated at the legal speed limit of 60 miles per hour regardless of whether the sign was present; (2) the evidence is far from conclusive that the curve sign was substantially obscured; and (3) there is no proof that the slight obscurity caused this vehicle to leave the road and crash into the tree.
Therefore, we find that this is a fact situation resolved against plaintiffs by the trial court. We have analyzed the pertinent facts herein due to the failure of the trial court to assign written reasons. We find that the overwhelming preponderance of the evidence is in favor of defendant’s contention that the accident resulted from the high-speed operation of the Cougar automobile by its driver and that the height of the sign and the slight interference with its visibility by the hazard marker were not causes in fact of the accident.
Where there is not simply a reasonable evidentiary basis but an overwhelming preponderance of the evidence in support of the decision of the trial court in favor of defendant and against plaintiffs, we must affirm. There is no error, and certainly no manifest error. We affirm the trial court’s decision. Appellants are cast for all costs.
Affirmed.